UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| ADVOCATES FOR DEMOCRACY AND : <br> MEDIA, INC., d/b/a ETHIOPIAN : <br> SATELLITE TELEVISION AND RADIO : <br> *Plaintiff* : <br> v. : <br> : <br> SOLOMON RETA, : <br> *Defendant* : | Case No. _____ |

**COMPLAINT AND DEMAND FOR JURY TRIAL**

NOW COMES Plaintiff, Advocates for Democracy and Media, Inc., d/b/a Ethiopian Satellite Television and Radio ("Plaintiff" hereafter), by and through undersigned counsel, and moves this Court for judgment against Defendant Dr. Solomon Reta ("Defendant" hereafter):

**THE PARTIES**

1. Plaintiff is a nonprofit and independent news media outlet with its principal place of business at 55 South Bragg Street, Suite 400, Alexandria, Virginia 22312.

2. Plaintiff is an Ethiopian media outlet established primarily to promote free press, democracy, respect for human rights, and the rule of law.

3. Defendant resides in Kansas City, Missouri. He is the former Chairperson of Plaintiff's Board of Directors.

**JURISDICTION AND VENUE**

4. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332. The parties are citizens of different states and the amount in controversy exceeds the sum or value of $75,000.00, exclusive of interest, costs and fees.

5. Defendant is subject to personal jurisdiction in Virginia pursuant to Virginia's long-arm statute, § 8.01-328.1(A)(1), (A)(3), (A)(4), and § 8.01-328.1(B) of the Code of

Virginia, as well as the Due Process Clause of the United States Constitution.  Defendant engaged in business in Virginia, took action as the Chairman of the Board of Directors of Plaintiff's Company—which has Virginia as a principal place of business—and accessed computer networks and systems located in Virginia.  Defendant's actions and authority under Plaintiff's Bylaws and pursuant to his duties to Plaintiff are central to this matter.  Defendant has minimum contacts with Virginia such that the exercise of personal jurisdiction over Defendant comports with traditional notions of fair play and substantial justice and is consistent with the Due Process Clause of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiff's claims against Defendant occurred in Alexandria, Virginia.

## STATEMENT OF FACTS

7. On February 20, 2021, Plaintiff's Board of Directors ("Board"), pursuant to Article 10 of Plaintiff's bylaws, dismissed Defendant from the Board and from his position as Board Chairperson by unanimous vote.  Exhibit A, ESAT Bylaws.

8. On February 23, 2021, the Board sent Defendant a Notice of Dismissal and Rescission of Authority ("Notice Letter").  Exhibit B, ESAT Board Letter.  In its Notice Letter, the Board instructed Defendant to, among other things, contact the board immediately upon receipt of the Notice Letter and relinquish "control over any financial accounts, funds, contracts, media accounts, e-mail systems, or other [Plaintiff] records or information."  The Board further instructed Defendant not to "access, move, spend, transfer, indebt, or otherwise take any action related to any [of Plaintiff's] funds."  *See* Exhibit B.

9. Defendant never directly responded to or confirmed receipt of the Notice of Dismissal. Nonetheless, based on information and belief, Defendant received the Notice of Dismissal since he continues to use his ESAT e-mail account, and his later correspondence through intermediaries indicated that he received and reviewed the contents of the Notice of Dismissal.

10. On March 10, 2021, Plaintiff, through counsel, sent another letter ("Demand Letter") to Defendant reiterating that Defendant was prohibited from accessing any of Plaintiff's "financial accounts, funds, contracts, media accounts, e-mail systems, or other [of Plaintiff's] records or information." Exhibit C, Demand Letter. The letter further reiterated that Defendant was required to turn over all accounts to Plaintiff, and that Defendant had "no legal authority to spend, access, or retain control over these funds." *See* Exhibit C.

11. To date, Defendant has not responded to nor has he complied with the terms of Plaintiff's Demand Letter. Similar to the February 23, 2021, letter, Plaintiff believes that Defendant received the March 10, 2021, letter based on responses from Defendant's associates to Plaintiff that indicated knowledge of the contents of the Demand Letter.

12. Specifically, following the e-mailing of the March 10, 2021, Demand Letter to Defendant, a number of Plaintiff's journalists and associates sent Plaintiff a demand that Plaintiff dismiss or stop any further legal action against Defendant. If Plaintiff did not comply with this demand, the journalists and associates threatened to leave Plaintiff's employ and start a rival organization.

13. This correspondence confirmed that (i) Defendant received the Notice of Dismissal and Demand Letter, (ii) Defendant was still accessing Plaintiff's e-mail accounts, and (iii) the risk of spoilation or misuse of Plaintiff's property and funds was high.

14. Defendant, as former Board Chairperson and administrator of many of Plaintiff's business accounts, exercised primary control over Plaintiff's accounts. These accounts include, but are not limited to, GoDaddy, GoFundMe, YouTube, Gmail, Google Adsense, PayPal, Twitter, Facebook, Viber, ADT Security Services, and RingCentral accounts (collectively, the "Business Accounts"). Based on how he administered these Business Accounts during his tenure as Chairman, Defendant is the sole individual who has the necessary login information to access many of these accounts, and he remains the sole administrator for the remaining accounts.

15. To date, Defendant has refused to relinquish control over or provide access to any of these accounts.

16. Plaintiff's GoDaddy account contains the necessary information for all of Plaintiff's email addresses associated with Plaintiff's web domain. Defendant is the sole individual with access to and control over Plaintiff's GoDaddy account. By effectively locking Plaintiff out of its GoDaddy account, Defendant has blocked Plaintiff's access to any other accounts associated with Plaintiff's web domain, email addresses, and multiple other vendor accounts that are essential for Plaintiff's operations.

17. Through Plaintiff's GoFundMe account, Plaintiff raised over $224,870.00 for Plaintiff's "ESAT Satellite Support Fund" ("fundraiser") during the fall of 2020. Plaintiff launched the fundraiser in support of the "common dream for a free and prosperous Ethiopia." Exhibit D, ESAT GoFundMe.

18. Plaintiff is a verified nonprofit, meaning GoFundMe transfers the funds from Plaintiff's GoFundMe account to Plaintiff's PayPal account.

19. Defendant refuses to provide Plaintiff with access to its GoFundMe and PayPal accounts, thus depriving Plaintiff of the $224,870 Plaintiff raised through its fundraiser.

20. Plaintiff, as a media outlet, relies heavily on its YouTube, Twitter, and Facebook accounts to promote its message of free press, democracy, respect for human rights, and the rule of law.

21. Defendant is the sole individual with administrator access to Plaintiff's YouTube, Twitter, and Facebook accounts.

22. By blocking Plaintiff's administration rights from these accounts, Defendant has caused significant disruption in Plaintiff's media operations and resulting damages. Defendant has also damaged Plaintiff's directors, employees, partners, and innocent donors.

23. Plaintiff has gone through exhaustive efforts to recover and regain access to its Business Accounts, to no avail.

## COUNT I
## BREACH OF FIDUCIARY DUTY

24. Plaintiff hereby incorporates all prior paragraphs as if fully restated herein.

25. Defendant, as Chairperson of the Board, had duties of loyalty and care to Plaintiff.

26. Defendant breached his duties to Plaintiff by organizing and administering Plaintiff's online vendor accounts under names other than Plaintiff's, and by blocking administration power to any other director, employee, or agent of Plaintiff.

27. Defendant breached his duty to Plaintiff by refusing to relinquish control over or provide access to Plaintiff's Business Accounts upon request by Plaintiff.

28. Despite request and despite being dismissed from the Board, Defendant continues to wrongfully maintain full dominion and control over Plaintiff's accounts, the funds therein, and the information and material that Plaintiff can access regarding its own systems.

29. Plaintiff was injured and continues to be injured in its business and property by reason of Defendant's breach of duties.

4832-7608-4193, v. 1

30. As a direct, proximate, and reasonably foreseeable result of Defendant's wrongful actions, Plaintiff has endured significant hardship and disruption to its business activities, including the loss of at least $224,870.00, attorney fees, costs, and interest.

## COUNT II
## CONVERSION

31. Plaintiff hereby incorporates all prior paragraphs as if fully restated herein.

32. Plaintiff is the rightful owner of the Business Accounts because the Business Accounts are in Plaintiff's name and are used to conduct operations in the name of Plaintiff. Defendant is merely an administrator listed on Plaintiff's Business Accounts.

33. Defendant has no legal authority to exercise control over Plaintiff's Business Accounts because Defendant was removed from Plaintiff's Board and from his role as Chairperson of the Board. Accordingly, Plaintiff is entitled to immediate possession of Plaintiff's Business Accounts.

34. Defendant refuses to relinquish control over or provide access to Plaintiff's Business Accounts, thus depriving Plaintiff of possession of its Business Accounts.

35. Defendant's wrongful exercise of dominion and control over Plaintiff's PayPal account has deprived Plaintiff possession of the $224,870.00 in funds that Plaintiff raised through Plaintiff's fundraiser.

36. Defendant's wrongful conversion is the direct and proximate cause of Plaintiff's damage in the amount of at least $224,870.00, attorney fees, costs, and interest.

## COUNT III
## INJUNCTIVE RELIEF UNDER VA. CODE ANN. § 8.01-622

37. Plaintiff hereby incorporates all prior paragraphs as if fully restated herein.

38. Through Defendant's wrongful breach of fiduciary duties and conversion of Plaintiff's property, Defendant has received access to and control over Plaintiff's property, accounts, and funds.

39. Defendant has no authority to access, control, or exercise dominion and power over Plaintiff's property, accounts, and funds.

40. Defendant has been given notice of the issues alleged herein and has failed to comply or otherwise act to relinquish or return control or authority over Plaintiff's property, accounts, and funds. *See* Exhibit B-C.

41. Defendant's failure to comply or otherwise meaningfully respond to Plaintiff's request to relinquish control of Plaintiff's property, accounts, and funds raises the specter that Defendant intends to wrongfully convert the property or already has done so.

42. Federal Rule of Civil Procedure 65 addresses the authority of a district court to issue "injunctions and restraining orders," and Rule 65(b) states that a district court "may issue a temporary restraining order without written or oral notice to the adverse party or its attorney" where: "(A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b).

43. Federal Rule of Civil Procedure 64 complements Rule 65 in stating that, at "the commencement of and throughout an action, every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64. The rule goes on to state that the "remedies available under this rule include," among other things, "attachment, garnishment, replevin, sequestration

7

and other corresponding or equivalent remedies," and that such remedies are available "however designated and regardless of whether state procedure requires an independent action." *Id.*

44. Virginia law permits a court to award an injunction "whether the party against whose proceedings the injunction be asked resides in or out of" the jurisdiction where the injunction is sought, Va. Code § 8.01-620, and also "to protect any plaintiff in a suit for specific property, pending either at law or in equity, against injury from the sale, removal, or concealment of such property." Va. Code § 8.01-622.

45. Virginia law further and expressly permits pretrial attachment if the plaintiff sufficiently shows that the defendant "[i]s converting, is about to convert or has converted his property of whatever kind, or some part thereof, into money, securities or evidences of debt with intent to hinder, delay, or defraud his creditors." Va. Code § 8.01-534(A)(4).

46. Virginia law also states that "[i]t shall be sufficient ground for an action for pretrial levy or seizure or an attachment if the specific personal property sought to be levied or seized" "[w]ill be sold, removed, secreted or otherwise disposed of by the defendant, in violation of an obligation to the plaintiff, so as not to be forthcoming to answer the final judgment of the court respecting the same." Va. Code § 8.01-534(B)(1).

47. Plaintiff is entitled to temporary, preliminary, and permanent injunctive relief enjoining Defendant and any affiliates, agents, and assigns from spoliating, dissipating, converting, misappropriating, or depleting any evidence, property, or funds related to the conduct at issue in this suit.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Court:

4832-7608-4193, v. 1

(i) Enter a preliminary and permanent injunction against the Defendant, as well as any participants in active concert or participation with him:

    a. Enjoining any interference with Plaintiff's Business Accounts and funds contained therein;

    b. Enjoining any use, access, or activity related to Plaintiff's Business Accounts and funds contained therein;

    c. Enjoining any and all activity alleged herein, any acts causing any of the injury complained of, and any acts assisting any other person or entity in engaging in or performing any of the activity complained of herein or from causing any of the injury complained of herein;

    d. Enjoining Defendant from using or controlling or in any way disposing of, transferring, concealing, wasting or spoliating any evidence, assets, or instrumentalities of the activity alleged herein;

(ii) Further enter judgment against Defendant on all counts as follows:

    a. Compensatory damages in an amount to be determined at trial, but not less than $224,870.00, with prejudgment interest from February 23, 2021, at the rate of six percent per annum until paid;

    b. Reasonable attorney fees;

    c. Costs expended herein; and

(iii) Grant Plaintiff any and all other all other relief that the Court may deem proper.

**TRIAL BY JURY IS DEMANDED**

Dated: March 26, 2021                            Respectfully Submitted,

4832-7608-4193, v. 1

                                                   Advocates for Democracy and Media, Inc., d/b/a Ethiopian Satellite Television and Radio
*By Counsel*

\_\_\_/s/_____
Samuel C. Moore
Virginia Bar No. 73233
Law Office of Samuel C. Moore, PLLC
526 King St., Suite 506
Alexandria, VA 22314
Email: scmoore@scmoorelaw.com
Phone: 703-535-7809
Fax: 571-223-5234
*Counsel for Plaintiff*

4832-7608-4193, v. 1